Good morning, Your Honors. Donald Cook for Mr. Fuller. The facts here, what you see in the videotape, or rather the video, as well as what you have in the declaration of Mr. Fuller and his deposition testimony, Deputy Streeter shoves his head against the wall, yanks his handcuffed hands up high behind his back, kicks him in the legs, even though he's complaining, I've got this serious knee injury, I can't spread my legs any further. Then the five or six deputies take him back to the sobering cell, and although this part's not viewable on the... The medical observation room. Also known as sobering cell. Euphemisms. Outside the view of the video, they slam him to the ground, knocking his head against the floor, loosens the tooth, which eventually it loses. Yank his legs up over behind him in that crossing position. Strip him down to his t-shirt and jeans, taking off his shoes and socks. Leave him there for seven hours because he's, quote, uncooperative. Of course, he says I'm not uncooperative, he is complaining. Complaining that he's got a serious knee injury. That evidence right there is sufficient to not only defeat the defendant's summary judgment motion, but really to grant plaintiffs. Because the deputies don't remember this incident, per their deposition testimony. Even after reading a streeter, after reading his report, looking at the video, still doesn't remember the incident. I don't have much to add than what you've already seen in the declarations, the depositions, and the video. As a matter of law, this force was unnecessary. Because someone complained of an injury doesn't mean you get to use this kind of severe force. It happens, however, in the Orange County Jail at IRC because according to the Nelson reports, deputies don't want to be there, view their assignment as providing an opportunity to practice their use of force skills. And that's what this was, a practice session. Now we would have liked to have questioned Sheriff Corona about the Nelson report. Because after all, it was Sheriff Corona who hired him to report to him about problems in the jail. We would have liked to have asked Sheriff Corona, did you consider the concerns that your consultant expressed to you? Did you take into account that perhaps, maybe, he might have a point? And we would have liked to have shown Sheriff Corona the video of our client being, you know, slammed to the ground, his hands yanked up behind his back. After all, Sheriff Corona was a defendant, but we couldn't take a deposition. Can I ask you something on that discovery? I mean, Magistrate Judge Nagasato, he didn't say you could not depose him. He said you needed to do some lesser intrusive types of discovery before you would be able to depose him. Did you ever do that? Well, we sought all complaints. We didn't get that discovery either because it's overbroad. Because it's overbroad, we suppose that we don't get anything. We did not get the unfounded complaints, unfounded, what the department claimed were unfounded allegations. And I'm not sure where this rule really comes from out of the federal rules that you must conduct less intrusive discovery before you can take the deposition of the sheriff. Because what we did have in this case, we had a fairly significant document, the Nelson Report, which personally implicated the sheriff. We had a complaint Mr. Fuller made directly to the sheriff, responded to by what defense counsel says was a form letter, but which we wanted to question Sheriff Corona about. I submit that the evidence in this case justified or supported our right to depose Sheriff Corona about this evidence, the Nelson Report, the complaint our client made. Counsel, let me stop you just a minute. On all of this discovery stuff, what's my standard of review? Abusive discretion. Clearly erroneous, isn't it? That's another way of stating abusive discretion, obviously. All right. And if I find, based on what Judge Wardlaw has appropriately questioned you about, as well as the three things that I think you're really going after here, was that the good magistrate said you need to exhaust less intrusive means before I let you depose the sheriff. You can't compel response to certain requests for production because they're overbroad and some of the information is irrelevant. And the motion to reconsider does not meet the standard. Those are the three things that I think we're really talking about here. And what you're suggesting to me is in a discovery dispute now, where judges are right there on the case. They know what's going on. They see the sides. They know what discovery has been done. They know what could be done. That I am supposed to say that what he did, he didn't say you can't depose the sheriff. He didn't say you won't get the response for requests for production. He said those requests were overbroad and some of the information was irrelevant. And you want this court to suggest that was an abuse. Did you list any of the responses for requests for production that you find were not overbroad? I mean, I looked at the ñ I tried to find the specifics. Did you look at any of the information he found to be irrelevant that you now say how it was relevant? Well, yes. The unfounded ñ we asked for the documents identified in the privilege log that the defendant submitted, which included complaint investigations where the allegations according to the sheriff's department were deemed unfounded. Those were not produced because they're basically irrelevant. Well, our contention is as a matter of law, the investigations into unfounded allegations are probably more probative than the investigations into any of the other allegations where they're sustained. After all, in the Larez decision, it was the LAPD's failure to find misconduct instead of treating complaints as being unfounded. That was evidence of the indifference of both the city and the chief. So I'd submit as a matter of law, denying a party investigative files because the allegations were deemed unfounded by the department is a legally erroneous basis for denying discovery. All right. Now let me change your subjects. You've laid out pretty strong facts in your opening here, and I've listened to them, and they were in your briefs, strong facts about why on summary judgment I should not uphold the summary judgment. However, let's go to the issues. What facts do you have that there is any First Amendment claim here? Because I have to find that an actor took some adverse action against the person because of his speech. That was protected speech, that the action chilled his exercise of his First Amendment speech, and the action did not reasonably advance a legitimate correctional goal. I could not find in this record those facts which would show that First Amendment rights were violated. You have Mr. Fuller's complaints. He couldn't spread his leg because of his knee injury, which apparently, circumstantially, is the reason for the deputy's teeing off on him is he's, number one, uncooperative, which is really a statement that he's complaining. He's mouthing off. And, of course, what he's complaining about are his injuries and his inability to do what the deputy wants him to do. But he's complaining about his treatment. As well. And that is free speech. That is an exercise of speech rights. What evidence do you have that they were beating him up because he was complaining about his treatment as opposed to because he was black? Or as opposed to the fact they didn't do what they were supposed to do in any event, and therefore they have violated a 1983 cause of action. Look at the video, Ann. You do not see in the video uncooperative behavior. You don't see Mr. Fuller threatening the officers. You don't see Mr. Fuller trying to escape. You don't have any physical actions by him. You know, this is why I don't think, even if we were to reverse the grant of summary judgment in favor of the county, we couldn't grant it in your favor because we have to look at the video. You're asking us to be fact finders. And there are inconsistent facts. I mean, I would love to be the trial attorney impeaching some of these officers with their depositions saying they don't know and then their declarations describing things in detail, something that would be very fun to do in front of a jury. But I do think because of these disputed facts, I'm not sure summary judgment was proper in either direction. Well, our first point is that the deputies' declarations cannot be considered because they're sham declarations. And that calls for a question of law. I mean, is a party entitled to come in and say A, B, and C in a deposition testimony, and then afterward realizing whether it's because of something the attorney told them or something else, the consequences of that admission, then come in with a declaration saying something entirely different. That's, in our opinion, sham allegation. That is the declaration and ought to be disregarded. Now, did you ask Judge Ciavelli to strike that? Yes, we did. And he denied that? Never addressed it at all in his ruling on the summary judgment motion. But we objected vigorously to the fact that the deputies were now coming in, particularly Deputy Streeter, with a declaration explaining why it is that he did what he did. After having testified at the deposition, having reviewed his report, having looked at the video, boy, I don't remember this incident at all. Well, there's a very clear case in California, D'Amico v. Board of Medical Quality, that says that one cannot consider declarations that are contrary to a deposition. Is there some similar law in the Ninth Circuit? It would be under rule, I guess it's rule 56F, the sham allegations. That would be the counterpart to the California law. Well, but do you have a case that's saying 56F applies in the circumstances that we have here? I know it was cited in the brief, and when I get up for rebuttal, I'll be happy to provide the citation. I know there are Ninth Circuit cases. Save some time for rebuttal. Yes, I will. I'm watching it. But even if you consider the declaration of Streeter, all he is saying in his declaration when you read it is, he's essentially speculating as to why he would have done what he did, which is to be kicking the feet further apart and grabbing Mr. Fuller, because Mr. Fuller, I thought, could have possibly assaulted me or about to commit some type of assault. Look, his subjective speculations don't cut it here. You have the videotape. We know from, or rather the video, we know from Scott v. Harris, when you have a video evidence like this, that's going to decide the issue. So I would save my remaining time for rebuttal unless there are further questions. Thank you. I'd like to address the First Amendment issue first, if I could. In his deposition, the plaintiff, Mr. Fuller, was asked what it was that he said, and I'm referring to page 140 of the appellant's excerpts of record. And he says, quote, I remember my need. He either need me or something. I apologize. I'm looking at the wrong one. Let me go back. This is the one. Appellant's excerpts of record, page 136. He says, question, after you turned around and faced the wall, in accordance with the instruction of the deputy, when was it that you spoke? Answer, he said, turn around, face the wall, spread your legs. And I said, I had a bad knee. And that's the only thing I said. Question, so as soon as the deputy was finished speaking, you spoke. Answer, I said, I have a bad knee. Question, is that a yes? Answer, yes. Question, did you say anything else? Answer, no. One statement about a bad knee, that's hardly a basis for a First Amendment violation. Is there some requirement if you're alleging a retaliation for a First Amendment statement that it has something to do with the public interest or be on a matter of public concern? I know there are cases saying that it has to be a matter of public interest. And in this case, I don't think it is. I mean, all he's saying is that he said he had a bad knee. He doesn't say the deputy said anything about it. I mean, that's it. That's the sum and substance of what the plaintiff alleges. Really his claim is that he was retaliated for speaking at all. Well, if that were the case, then every Fourth Amendment force case would be a First Amendment case, wouldn't it? Because I can't imagine a circumstance where a plaintiff is claiming excessive force where he couldn't say I was retaliated against because of what I said or because I protested the use of force. And that goes back to the Supreme Court cases saying you look at the most applicable constitutional provision when you're considering a 1983 claim. And in this case, the plaintiff is clearly claiming excessive force. Whatever damages he would have would be duplicative. Even if we allowed both theories, the damages would be duplicative. Yes, they would. But I think if, for instance, a Fourth Amendment and First Amendment claim were allowed to go to a jury, now you've got different standards. And you could conceivably have a First Amendment violation where you didn't have a Fourth Amendment violation. And so how would you reconcile a use of reasonable force with a finding of a First Amendment violation? You can't. And the Supreme Court has essentially said that, I think, in Albright v. Oliver. So clearly it's the Fourth Amendment that applies here, not the First Amendment. And even if there were a colorable First Amendment claim, I mean, it's not supported by the evidence. There's only one statement. Let me move on to the least popular defendant here, Sheriff Corona. There's no evidence of any involvement by him. And I think appellants are hanging their hat solely on the Nelson report. And what has happened is taking a few statements in the Nelson report, which is, after all, a report that was sanctioned by the sheriff himself. Right, but isn't there allegation that he saw there was a problem in the prison, commissioned the Nelson report. Nelson report comes up with recommendations, and they're not implemented. I think what happened was that Mr. Nelson offered to implement those recommendations, and he wasn't hired to do that. Was anybody hired to do it? I'm sorry? Was anybody hired to do any of the recommendations? Was anyone hired to do that? I think the record is, there's nothing on the record one way or the other about that. But let me, let me, the Nelson report, if you look at it. Doesn't that raise a triable issue of fact about deliberate indifference? I don't think so. And this is directly from the Nelson report. This is at the appellant's excerpts of record at page seven. And it reads, this is Mr. Nelson, quote, the consultant was genuinely impressed by the professional competence of the management staff and their sincere commitment to reducing use of force incidents. While the frequency of use of force incidents is not excessive for a jail system of this size, approximately 5,000 inmates, management expressed a strong determination to resolve any questionable practices. Now that's hardly an indictment of the sheriff or the jail, the way it's run. So really what has happened is a couple of statements out of a rather lengthy report have been offered up. But the entirety of the report doesn't support what the appellants are contending at all. The report supports the fact that the staff, including Sheriff Corona, were concerned about excessive force and had the right approach to it. Kennedy. But what you're doing is taking certain statements that are favorable to your side, and it's perfectly understandable that you do so, and weighing them against certain statements which are not favorable to your side and saying the weight of your statements outweighs the other, which is a sort of weighing of evidence which shouldn't be done on a motion of summary judgment, right? Well, I disagree with that. And the reason is that the statement that I just read is the generalized impression of Mr. Nelson regarding the sheriff's department and the jail. Now, are we going to say there's a tribal issue of fact because he identifies certain problems? I mean, if he came in and he said this jail is perfect and nothing bad ever happens, who would accept that? And how could that ever be the case? But the question is, is there sufficient evidence of deliberate indifference? And I submit to you the Nelson report doesn't support that. The worry that I have reading the record is that there's an internal memo that said that these officers acted in accordance with the policies, that the officers said they acted in accordance with the training and policy of the sheriff, and that there's a criminal justice consultant who says that everything is okay in what happened here, and that that has nothing to do with the sheriff. Well, there's no evidence that that was presented to the sheriff himself. I mean, after all, this is the second largest sheriff's department in California, so he doesn't have personal involvement with each and every incident. He certainly has personal involvement with the policies in which you've been acted here, and we have an internal memo that says that these officers' conduct acted in accordance with such policies, and that the officers say in their own testimony, saying they acted in accordance with the training and policies the sheriff had adopted. Well, that's a problem if one accepts the plaintiff's version of the facts. But don't I have to on summary judgment? Those are two different things. When we're talking about whether or not the department has a policy of excessive force, you don't prove that by saying, well, the deputies say they acted in accordance with policy, and therefore the policy must be to use excessive force. But you look at the policies, and then after looking at the policies, you can also find internal memos inside the sheriff's county policy that say everything happened in accordance with what we had suggested they ought to do, and then the officers say they did that. And then with all of that, then you try to get the sheriff out. That's the worry I have on summary judgment as to a 1983 claim. But then you have to look at the county of Orange is in the same boat, in my book, on those same situations. I understand that, that you have to look at what facts are being assumed is true in deciding whether or not the deputies acted in accordance with policy. Certainly if they say, well, they needlessly used force, and they kicked him when they didn't have to, and they slammed his head against the ground, and that's pursuant to our policy, I would agree with you. But that's not what they're saying. What they're saying is that they accept what the deputies say happened. Deputy Streeter prepared a report setting forth what had happened. There's the video, which the district court looked at, and the district court found that the video supported the defense position. So it's not as simple as saying, and if what Your Honor was saying were true, in every case where plaintiff's counsel asks a deputy, did you act in accordance with policy, and he says yes, and you have the most egregious situation of excessive force, then you could never get a county or a supervisor out on summary judgment because you're accepting what the deputy says as the policy of the department. And that's not what's happening here. Is there any evidence on what facts the writers of the internal memo relied in making their conclusion that the actions of the sheriff deputies were in accordance with policy? Yes. They looked at the report from the CHP officer, Dialos. Is that in the internal memo? I believe it is. They looked at the report of Deputy Dialos. They looked at the report of Deputy Streeter. I mean, that's the version of events that they accepted when they decided that the deputies did not violate policy. Let me, if I could. I just want to ask about the discovery of the claims that were found to be unfounded. I know how the LAPD works. They're unfounded if they're in policy. Is that the same standard in Orange County? I assume it is, Your Honor. I mean, that's been my experience with all departments. If they say unfounded, there's no violation of policy, which is different than saying everything was pursuant to policy. Right, but there's no violation of policy, which means that those unfounded claims probably are relevant because that would tell the plaintiffs what in the sheriff's department's mind was not contrary to policy. And then you could see what these things that were done were not contrary to policy to glean what the policy was and who was aware of it and how it was handled. Well, whether something's relevant is more than just whether it's unfounded. I mean, the magistrate judge needs to look at the allegations and would evidence from that support a claim of policy or custom. And he can do that. He can do that in camera and then produce the ones that would demonstrate that, which I personally have done when I was a district court judge, and narrow the scope of discovery. But he just denied it. Well, I think it was in large part because of the breadth of the request. And I know appellant counsel says that, well, you shouldn't deny it just because it's overbroad. But the other side of that coin is, does the district court have to redraft every discovery request? You just throw up overbroad requests and then allow the district court to sort that out. And I don't think you do. Don't the parties sort that out? Don't you make the objections overbroad and get together and say, okay, we're willing to produce X? If everybody is acting reasonably and trying to resolve these issues, yes. I agree with you. But unfortunately, that's not always the case. Before my time is up, I'd like to talk about the facts here. And I think the facts of the incident itself. And I think this case is very much like another case in this Court, Arpin v. Santa Clara Valley Transportation Agency, a 2001 case. It's 261F3-912. And in that case, summary judgment was granted by the district court to a plaintiff claiming excessive force. Now, one of the claims that the plaintiff in that case had made was that she claimed that, quote, Stone allegedly handcuffed Arpin, twisting Arpin's left arm behind her, with enough force to lift her off the ground and break her watch band. And the district court granted summary judgment on the excessive force claim, and this Court upheld it, pointing out that the plaintiff had failed to submit medical evidence that there was any injury and had not supported her claim of injury above and beyond her own statement. This case is very much like that. And let me go through the specific things referred to by appellant's counsel. He claims that the plaintiff was kicked in the leg. It's clear from the video there's no kicking of the leg. And, in fact, the plaintiff himself testifies in his deposition that the deputy put his foot on an instep to move his leg outward. There's no kicking going on. Secondly, the counsel says that the plaintiff's face hit the ground and loosened a tooth that eventually came out. Well, the evidence is very much different than that. In his deposition in November of 2004, the plaintiff claimed that his tooth was knocked out. In the declaration filed in support of plaintiff's summary judgment, the declaration says his tooth was loosened. And then in the brief, in an oral argument, appellant's counsel says that he had a loosened tooth that eventually came out. There's no evidence of that. The evidence submitted was that he lost his tooth, and subsequently says it loosened. And there's no medical evidence of that. Nothing that was before the court. The notion about hitting the wall. If you look at the appellant's testimony, he says, and it's at the appellant's excerpts of record at 140, on page 140, he says he almost hit the wall. And he maybe hit the wall. But he doesn't say that he even did that. We talk about the knee. There's no medical evidence that the knee was injured in the sobering cell that they took him to. He said that he was about to have knee surgery before he was arrested. And the evidence is that the surgery that he received was almost four years after this incident. And there's certainly no medical evidence before the district court that any injury was caused to the plaintiff by the deputies. The district court looked at the video and saw what happened. So I think this case is very much like Arpen. It's a case where the plaintiff is making conclusive allegations. Is it a conclusive allegation when the plaintiff testified that one of the deputies put his knee on the back of Fuller's neck and bounced up and down his neck at least ten times? I think that is one of those allegations that is not plausible. It's not an allegation. An allegation isn't a complaint. This is testimony. It's testimony. And I think it's of no more value than the plaintiff's testimony in Arpen. Because in Arpen, the plaintiff claimed that the defendant in that case took the arm and pulled it behind her back so hard that it pulled her off the ground. And this Court said that's not enough to get past summary judgment. So you're suggesting that bouncing on somebody's back is the same as twisting their arm? The plaintiff said that it was his neck. And I submit to Your Honor that if it happened the way the plaintiff says, there would have been some manifestation of injury as articulated in Arpen, and there was none. But that's very good as to the weight of his testimony and to whether we ought to have a summary judgment or not and whether there are questions of fact which can be brought. But moving for summary judgment, given those kind of complaints, is what we are now trying to decipher on a summary judgment standard. I understand. And given the very specific stuff that we have in our own statutory framework about what excessive force is. I understand that. And one of the arguments that's made in our brief is that this Court can uphold the district court on any ground supported by the record, one of those being qualified immunity. And the purpose of qualified immunity is to sort out those insubstantial claims at the summary judgment stage. Did you move for that? I'm sorry? Did you move for qualified immunity? Yes, we did. Did he grant that or he just didn't address it? The order just says he's granting it on the merits. And since the inquiry on qualified immunity is a more forgiving standard for the defense than on the merits, that is something this Court can. Viewing the evidence in light most favorable to the non-moving party, I don't think they'd survive on qualified immunity. I think we have to look at each of those things that's being claimed by the appellant and take a good hard look at them, like being slammed against the wall. The evidence doesn't support that, not the plaintiff himself. And that's where we get back to there's disputed issues of fact. Well, the plaintiff can't create a disputed issue by contradicting himself. I mean, if he says on day one that his tooth fell out and then on day five that it was loosened, I mean, what are we to accept about that? And there's certainly no testimony that it was loosened and then fell out. That's an invention. And so I think we have to look at each of those things. And I submit to you if you look at the video, there's nothing in there that appears to be excessive force. And if you look at the plaintiff when he's in the booking area before he's in the uncut area, what you'll see is that the CHP officer is standing there and the plaintiff is seated on the chair and he puts up his legs and he slides around real fast to the other side and he has to come back and bring him back to where he's supposed to be. And shortly after that point, deputies come into the area and you can see that there's a disturbance being created because those deputies weren't there before. So I don't really think there's a dispute about what the plaintiff was doing. Well, the bottom line is if we look at all of the facts, we have a video of some of the things that happened. We don't have a video of all of the things. And then we have to give the plaintiff the benefit of the doubt as he asserts the facts and some we have no video to suggest he's even wrong about. We just have argument. And whether he was saying one thing one time and one thing another. But I guess we have to say, based on giving best evidence, the benefit of the doubt to the plaintiff and looking at all of the facts in front of us, that there is absolutely no way one could find an issue of fact in this case which meets the standard of review which we have to deal with in our precedent as to excessive force. My worry about that is trying to balance that, which we try to do, video, facts, what they said, when they didn't say it, to suggest that there's no question of fact as to what he's alleged to happen and that therefore I can say summary judgment even if I don't have a medical report is a difficult one. And I don't believe that prior case says I got to have medical evidence in order to make the standard. Well, it certainly depends on the facts and circumstances. And I understand, I understand Your Honor's position. But I submit to you that this case is like ARPAN because it is where there's a conclusory allegation. I mean, the Court had to accept in that case. But what's conclusory allegation about saying there were at least six deputies on top of my neck? That's not conclusory. Well, he never said there were six deputies on his neck. What he claims is that when they were unhandcuffing him in the sobering cell and they were taking his shoes and socks off, that there was a deputy on his neck. And he was asked how many times had he been on his neck. That's not conclusory. A deputy on my neck is not conclusory. Well, it's the same as the allegation by the plaintiff in ARPAN, which is that the defendant in that case took her arm behind her back and pulled it up so hard that she came off the ground. And what the Court said in that case was we need to see some medical evidence if we're going to get past summary judgment on that type of case. And I don't think the facts here are any more egregious than there. I really, really don't. And I apologize if it sounds like I don't want to pile on Sheriff Corona and his troubles. But I'm just wondering if the same reasons that existed at the time that his deposition was denied still exist today, given that he's on paid leave. And I'm sorry, that is? For his deposition. He could really get to the bottom of his role in setting policies if you got him for an hour. Well, as Your Honor pointed out earlier, at the very least, why not send him some interrogatories saying, do you have any personal knowledge about this? And I can tell you what it would be. But the magistrate judge denied it because on the doctrine of the person in high places who was too busy to – I mean, that was his legal ground for asking for something short of the deposition. I think – frankly, I think it's a leap to say now that he's been indicted, he's got time on his hands. He's on leave. He doesn't have day-to-day responsibility. Couldn't ask – is it unreasonable to have him answer a few questions? He could go either way and decide whether he should be in this case or out of this case. I'm sorry. I'm not really prepared to say what his calendar looks like and what he's doing now. I suspect he's got his hands full, and it's regrettable that this circumstance exists. But I'm really not prepared to address that aspect of the case. Thank you, counsel. Thank you. The excellent job of arguing those sides. I know you have a few more minutes. You don't need to take them. To give Judge Bea the answer to your question, if you look at the top of page 17 of the Pelham's opening brief, we cite the authorities. They basically say the same thing as the California law about sham declarations. The Cleveland decision, a U.S. Supreme Court decision, and a school district number one decision out of this court. Again, that's top of page 17 of the opening brief. I know from the tenor of the questionings how you're viewing this case in terms of the facts. And I also know it is infrequent for a court to ever grant summary judgment for a plaintiff in an excessive force case. Plenty of cases where it's granted in favor of the defendants, but very, very rare for a plaintiff. But look, go back, take a look at the evidence that the deputies offered to oppose our motion. Our point is that evidence would not justify denying our summary judgment motion. The defense argument here basically ignores what Mr. Fuller testified to, as well as what you actually see on the video. And as far as deposing Sheriff Coronel, go back to Larez's decision. Larez for the city of Los Angeles, Chief Gates testified in that case. And then later made these statements to the reporters, which were then introduced in evidence. Now, there was no really any argument, dispute that he made the statements, but the statements were in their form and admissible. Do you really think those statements would have been made if the questions came to Chief Gates in the form of interrogatories, where his attorneys looked at those interrogatories and thought about, hmm, how do we answer those? No. Obviously, the evidence that came out there came out because they were spontaneous statements by Gates, and you got a real look into his state of mind. Because he wouldn't listen to his attorneys anyway. That may be. But that's why, for example, particularly for someone like a Sheriff Coronel, you want to be in a position of having the person across from you at the table so you can question them at a deposition. But the problem comes, and this is, I'm not necessarily, I hear your argument. The problem comes in the standard of review. When you have a person such as the Sheriff of Orange County, who has all of the things that he has to do in his position, and he's doing all of that, that the magistrate would say, there are less invasive ways to do this first before you take the Sheriff's deposition. And me to say, that's abuse of your discretion. That's clearly erroneous. That's what I think you have to worry about here. I can understand your argument, and you make it well, but the standard of review is very important. I say there are no less intrusive means here. Kind of a funny argument to make because we're usually on the different side on this kind of argument. But because there is nothing comparable to being able to pose the question to the witness at the council table and getting the witnesses answered unfiltered by his attorney, which is what you get in interrogatories. That's why I say there are really no alternatives here. And as far as his claim that he's a real busy person, well, I've deposed Sherman Block. I've deposed Darrell Gates. I've deposed top officials from other law enforcement agencies, and I'm not alone in that. There's nothing special about my skills here in being able to depose those individuals. They've been deposed by many of my colleagues. I've yet to see that Sheriff Corona has ever been deposed by anybody. So I think this claim that he's really busy or was busy then, maybe busier now, is overblown. Thank you. Thank you very much, counsel. Fuller v. County of Orange is submitted. And the last case on the docket for today, Feldman v. Minnella, is also submitted for decision, and we will be in recess until 930 tomorrow morning. Thank you.
judges: Wardlaw, Bea, Smith